### In re MARX TAILORING CO.

(District Court, N. D. Alabama, S. D. May 23, 1912.)

#### No. 11,410.

BANKRUPTCY (§ 140*)—GOODS—OWNERSHIP—BAILMENT OR SALE.

Petitioner on closing a tailoring business deposited certain piece goods as samples with the bankrupt on an agreement with the bankrupt to handle the goods as samples on the commission basis, having suits sold therefrom made up by petitioner in another city if the customers would consent, otherwise the bankrupt might use the samples to make up suits for customers who would not consent, paying petitioner therefor 20 per cent. above list price. The bankrupt was not required to account to petitioner for the specific proceeds of the goods so used, and he so used practically all the goods disposed of by him at all; petitioner claiming the remainder as his own as against the bankrupt's trustee. *Held*, that since there was no sale until the privilege to purchase was exercised by the bankrupt, and then only as to the piece purchased in each instance,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the contract was one of bailment, and not sale, and that petitioner was entitled to a surrender of the goods so remaining.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

In the matter of bankruptcy proceedings of the Marx Tailoring Company. On petition to review referee's order denying the petition of Julius Winter, Jr., to reclaim property. Petition to review granted, and trustee directed to surrender property to petitioner.

Black & Davis, of Birmingham, Ala., for petitioner.
Thompson & Thompson, of Birmingham, Ala., for trustee.

GRUBB, District Judge. This is a petition to review the order of the referee, disallowing the petition of Julius Winter, Jr., to reclaim certain goods in the possession of the bankrupt at the time of the filing of the petition and claimed by the petitioner.

The petitioner had at one time conducted a branch tailoring business in Birmingham on his own account, and the goods in controversy were his stock in trade. Upon closing out this business, instead of shipping back the goods to his main place of business in Louisville, Ky., the petitioner entered into an agreement with the bankrupt to handle the piece goods as samples on a commission basis, the goods to be made up in Louisville when the bankrupt could persuade his customers to consent. The petitioner was to pay taxes and insurance, and be entitled to recall any of the goods at any time and all unsold goods at the end of the season. Goods damaged while in possession of the bankrupt, except by fire, were to be paid for by him. The bankrupt was to have the privilege of using any of the piece goods to make up suits for customers who would not consent to have them made up in Louisville, and such as were so used by the bankrupt were to be charged to him at 20 per cent. above list price, but he was not required to account to petitioner for the specific proceeds of the goods so used. The history of the transaction was that the bankrupt so used practically all of the piece goods disposed of by him at all; the remainder being in his possession when this petition was filed, and it is to this remainder that the claim of petitioner applied.

The question presented by these facts for decision is whether or not this agreement was a conditional sale, void as to creditors, because not recorded, and because it permitted the vendee to resell in the ordinary course of business, without accounting to the seller for the specific proceeds of the goods resold. The question is to be determined by the terms of the written agreement between the petitioner and the bankrupt as they are unambiguous, rather than by the subsequent actions of the parties under it, since it does not appear that the agreement was colorable only, and not made in good faith. The trustee's contention is that the privilege given the bankrupt without limit of making up and selling such of the piece goods as were sold by him to customers who would not consent to have them made up in Louisville, without accounting to petitioner for the proceeds, made the contract void as to subsequent creditors of the bank-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rupt, inasmuch as it was inconsistent with a reservation of title in the seller, and the case of In re Priegle Paint Co. (D. C.) 23 Am. Bankr. Rep. 385, 175 Fed. 586, is relied upon in support of this contention.

There is no doubt from the language and provisions of the written agreement that the intent of the parties to it was that the ownership of the goods was to remain in the petitioner, and this intent as between the parties will prevail, unless the privilege granted the bankrupt of reselling is inconsistent with such retention of ownership when the rights of subsequent creditors who may be presumed to have extended credit to the bankrupt on the faith of his apparent ownership of the goods so placed in his possession intervene.

In the Priegle Paint Co. Case the evidence tended to show a present sale to the bankrupt at the time of delivery of possession, the title being retained by the seller as security for the purchase money, and the bankrupt being privileged to sell in the regular course of trade. The goods were delivered for no other purpose than a resale by the bankrupt. This case differs from the Priegle Paint Co. Case, in that the primary purpose for the delivery of possession of the goods to the bankrupt was to furnish the bankrupt samples by which to take orders for the making of suits by the petitioner in Louisville, and it was only in the event that and at the time when the bankrupt had exhausted, in the case of each customer, all efforts to induce him to permit the suit to be made up in Louisville, that the contract authorized him to appropriate the sample piece and cut out of it a suit for such customer himself at Birmingham, pieces so appropriated to be charged to him at agreed prices. While the bankrupt's privilege to purchase existed from the time the contract was executed and might be exercised without limit so as to exhaust the entire stock, it remains true that there was to be no sale or purchase, either of the stock as an entirety or of any piece thereof, until a time in the future subsequent to the making of the agreement and delivery under it, when the privilege was actually exercised by the bankrupt under conditions authorized by the terms of the agreement. During the interim the title and ownership remained in the petitioner, the possession being in the bankrupt for the purpose only of use by him as samples. Until the privilege of purchase was, in fact, exercised by the bankrupt, the effect of the transaction was not a sale with retention of title to secure the purchase price, but a bailment for the purpose of use as samples and with the privilege of purchase when conditions justified. In such a contract title does not pass to the purchaser any more than in an ordinary bailment, and it is not void as to creditors.

The distinction between a sale and a bailment with privilege of purchase, and the differing effect in the transferring of title, is clearly stated by the Supreme Court in the case of Sturm v. Boker, 150 U. S. 312, 328, 329, 330, 14 Sup. Ct. 99, 104 (37 L. Ed. 1093). Of a bailment with privilege of purchase the court said:

"The class of contracts known as contracts of 'sale or return' exist where the privilege of purchase or return is not dependent upon the character or quality of the property sold, but rests entirely upon the option of the purchaser to retain or return. In this class of cases the title passes to the pur-

chaser subject to his option to return the property within a time specified, or a reasonable time, and if, before the expiration of such time, or the exercise of the option given, the property is destroyed, even by inevitable accident, the buyer is responsible for the price. The true distinction is pointed out by Wells, J., in Hunt v. Wyman, 100 Mass. 198, 200, as follows: 'An option to purchase if he liked is essentially different from an option to return a purchase if he should not like. In one case the title will not pass until the option is determined; in the other the property passes at once, subject to the right to rescind and return.' * * * The contract in its terms and conditions meets all the requirements of a bailment. The recognized distinction between bailment and sale is that, when the identical article is to be returned in the same or in some altered form, the contract is one of bailment, and the title to the property is not changed. On the other hand, when there is no obligation to return the specific article, and the receiver is at liberty to return another thing of value, he becomes a debtor to make the return, and the title to the property is changed; the transaction is a sale. This distinction or test of a bailment is recognized by this court in the case of Powder Co. v. Burkhardt, 97 U. S. 110, 116 [24 L. Ed. 973]. The agency to sell and return the proceeds, or the specific goods, if not sold, stands upon precisely the same footing, and does not involve a change of title. An essential incident to trust property is that the trustee or bailee can never make use of it for his own benefit. Nor can it be subjected by his creditors to the payment of his debts. Testing the present case by these established principles, it admits of no question that the contract was one of bailment, and that the title to the goods, with the corresponding risk attached to ownership, remained with the defendants."

The distinction is also thus stated in a note to the case cited, as reported in 37 L. Ed. 1094:

"A bargain of sale and return in the strict sense, which is subject to a condition subsequent rendering the contract defeasible, after delivery of the chattel, is to be distinguished from a transaction which amounts to a mere bailment, with the privilege of purchase."

In the case of Wood M. & R. M. Co. v. Vanstory, 171 Fed. 375, 380, 96 C. C. A. 331, 336, the Court of Appeals for the Fourth Circuit thus expresses the principle:

"In order to correctly determine as to whether title to property passes under a given contract, it becomes necessary to ascertain the intention of the parties at the time the contract was made. In this instance it was evidently the intention of the parties that the petitioner should not part with the title to such property, and that the bankrupt was only to be given the right of possession in accordance with the terms specified in the contract. The title to the property being in the petitioner, and being held by the bankrupt as agent of the petitioner, it necessarily follows that there was no transfer of the title to the bankrupt, and that it held possession of the property for the sole use and benefit of the petitioner, merely acting as his agent for such purpose, and none other. The fact that the bankrupt was given an option to purchase a portion of this property did not change the nature of the contract, by virtue of which the property was stored with the bankrupt as hereinbefore stated; it having no more right to the property by virtue of its being in its possession than it would have had, had the property been in the hands of the petitioner or some other party, inasmuch as it was clearly the intention of the parties that the petitioner was to retain title to the property. Even if the bankrupt had an option to purchase the entire lot of machinery deposited with it, under the circumstances, with the conditions attached as in this instance, the granting of the option on the part of the petitioner could not have the effect of converting the bailment into a sale, nor could it vest the bankrupt with the title to the property."

If these citations correctly assert the law, the conditional privilege of purchase conferred on the bankrupt did not convert the contract,

which concededly was otherwise one of bailment into a contract of sale. There was no sale until the privilege was exercised by the bankrupt, and then only as to the piece purchased in each instance. Accordingly, the goods which came into the hands of the trustee, as to which no option to purchase had been exercised by the bankrupt before the filing of the petition, were held by him at that time as bailee merely, and are subject to be reclaimed by the petitioner.

The petition for review is granted, and the trustee is directed to surrender the goods claimed to the petitioner.