### In re ZEPHYR MERCANTILE CO.

(District Court, N. D. Texas. March 1, 1913.)

#### No. 148.

BANKRUPTCY (§ 184*)—CONTRACT—CONDITIONAL SALE OR BAILMENT.

A bankrupt having ordered certain flour and meal from claimant, the latter refused to ship, except on "consigned terms" declaring that claimant would not pass the possession of the goods to the bankrupt, or to any one. This being agreed to, the material was shipped, without any express reservation of title in the claimant; nor was there any stipulation for a return to claimant of the unsold portion. It was provided, however, that the material should be sold at retail in the course of trade, the bankrupt to pay therefor in money as the goods were sold, and being required to check up and settle every 15 days. It was also provided that the bankrupt should insure the material for the claimant and in its name, but this was not done. *Held*, that the transaction was not a bailment, but a conditional sale, and, not having been filed for record as required by the state law, was invalid as against the bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

In Bankruptcy. In the matter of the Zephyr Mercantile Company. On certificate of a referee to review an order denying the claim of the Krum Mill & Elevator Company for reclamation of goods or the proceeds of their sale. Affirmed.

Leake, Henry & Robertson, of Dallas, Tex., for claimant.

MEEK, District Judge. The Krum Mill & Elevator Company (hereinafter called the mill company) filed its petition with the referee for the reclamation of certain flour and meal it claimed to have shipped on consignment to Zephyr Mercantile Company (hereinafter called the bankrupt), and which was on hand at the date of bankruptcy, or, in the alternative, for the payment to it by the trustee of the bankruptcy estate of the proceeds of the sale of such flour and meal. The trustee contested the right of the mill company to reclaim this merchandise,

or the proceeds. After hearing, the referee entered an order deny-- ing the mill company this relief. A review of this order is sought.

The summary of the evidence contained in the certificate of the referee includes the letters and telegrams, passing between the mill company and the mercantile company, which resulted in the ship-- ping to the bankrupt of the flour and meal. It must be determined, from this correspondence and from the acts of the parties with regard to this shipment, as to whether the merchandise was consigned to the mercantile company for sale on behalf of the mill company, or whether it was conditionally sold to the mercantile company. The correspond-- ence passing between the parties and their acts in the premises are as follows:

" 'October 11, 1912.

" 'Zephyr Mercantile Company, Zephyr, Texas—Gentlemen: Relative to your order given to our Mr. Glen, wish to say that we cannot confirm same, only on consigned terms. By this we mean that we will not pass possession of the goods to you, nor any one, but will expect you to pay for same as sold, at price per sales ticket, and to take out insurance policy covering the same in our name, we to pay cost of such insurance. If you are doing a cash business, this plan should appeal to you, as you will not have to pay only as the goods leave your possession. But we will expect you to check up your stock at least every 15 days, and remit for all goods not in your stock. If the above terms are satisfactory to you, and you are needing the goods, you may wire, at our expense, the following wire: "Letter received, ship car per same"—and we will make the shipment at once.

" 'Yours truly.'

"That the following telegram was received in response to the above let-- ter, viz.:

" 'Zephyr, Texas, October 12th.

" 'Krum Mill & Elevator Company, Krum, Texas. Letter received, ship car per same. Zephyr Mercantile Company.'

"That the meal and flour were shipped upon receipt of said telegram, and that the following memorandum was mailed to the Zephyr Mercantile Com-- pany, to wit:

" 'Krum, Texas, October 14, 1911.

" 'Consigned to the Zephyr Mercantile Company, Zephyr, Texas. To be sold as the property of the Krum Mill & Elevator Company. [Then follows a de-- scription of the goods.] In acceptance of this invoice, the consignee agrees that they are consignment goods, and property of the Krum Mill & Elevator Company, of Texas, and are to be sold for their account, and remitted for at above prices.'

"That this notation was not signed by the said Zephyr Mercantile Com-- pany; that the Zephyr Mercantile Company did not take out the insurance as contemplated; that this meal and flour was placed with the stock be-- longing to the said Zephyr Mercantile Company daily exposed for sale. That the Zephyr Mercantile Company wrote the following letter relative to a short-- age, to wit:

" 'Zephyr, Texas, October 25, 1911.

" 'Krum Mill & Elevator Company, Krum, Texas—Gentlemen:—Find in-- closed policy. In checking up the flour [word omitted] to be short 80 sacks. The drayman kept tab; also found 80 short.

" 'Yours very truly, Zephyr Mercantile Company.'

"That the Krum Mill & Elevator Company wrote the following letter in regard to the insurance, to wit:

" 'October 16, 1911.

" 'Zephyr Mercantile Company, Zephyr, Texas—Gentlemen: Inclosed you will find invoice and bill of lading for car of flour products, shipped as per

203 F.—37

our agreement by wire and letter. You will note that we failed to get the amount of meal your order called for. This we regret, but to have filled the order in full would have caused us to have held the car another day. The car left here yesterday morning, and should reach you by the time this does. Kindly have the goods covered by invoice immediately on arrival, and have same insured in the Krum Mill & Elevator Company's name. Mail us the policy, and charge the amount of premium to us. If there is any representative of the London & Globe Insurance Company in your city, would prefer it insured in that company. Kindly check up your stock of flour about every 15 days, and remit for all not in stock, as you doubtless know the law on disposing of consignment goods. Relative to the quality, we are behind anything you may want to say. Thanking you for the order, we are,

" 'Yours very truly,        Krum Mill & Elevator Company.'

" 'October 26, 1911.

" 'Zephyr Mercantile Company, Zephyr, Texas—Gentlemen:—Inclosed you will find insurance policy, which we are returning to you, asking that you make the following corrections: First. This policy must be in our name, as per our instructions to you. It may appear to you that the loss payable clause covers this; but it does not, and we want the policy to cover flour and mill products only, and make the amount only $500. Relative to the shortage which you report, will say that we loaded by double check 350 48–lb. Rainbows, 180 48–lb. Creams, 65 35–lb. meal and 25 17–lb. If you did not check out this many there is bound to be a mistake somewhere, and we positively know that this flour was put in the car, and, if the car went through to your station with the same seals it left here on, it is bound to have been in and all arrived. Kindly investigate this at once, as our agent can certify that this amount of flour was in the car at the time of sealing. Kindly attend to the insurance matter at once.

" 'Yours very truly,        Krum Mill & Elevator Company.'

" 'November 2, 1911.

" 'Zephyr Mercantile Company, Zephyr, Texas—Gentlemen: We ask that you kindly favor us with a reply to ours of the 26th, as this insurance matter is important, as we trust that you will give it your immediate attention. Awaiting your reply, and trusting that you have found your error in counting the flour out, we are,

" 'Very truly yours,        Krum Mill & Elevator Company.'

"That the Krum Mill & Elevator Company received no communications from the Zephyr Mercantile Company, except those mentioned above. That the said Zephyr Mercantile Company sold some of the meal and flour, and made two deposits in the First State Bank at Zephyr, Tex., one on the ——— day of October, A. D. 1911, for the sum of $2.60, and another on the 30th day of October, A. D. 1911, for the sum of $2.05, in favor of the Krum Mill & Elevator Company. That it has been agreed by the receiver that the flour and meal described in the reclamation petition is the flour that was on hand and received by him as receiver of the estate. That he received 429 sacks of flour, 53 sacks of meal, and 22 one-half sacks of meal, which he found to be in a rat-eaten condition, and considered necessary to be sold to preserve the main part, which he did sell at the best price he could get, for $448.37, which amount is subject to the orders of the referee herein, and the petition in reclamation filed in this proceeding. That none of the letters or telegrams or any contract has been filed in the county clerk's office of Brown county, Tex. That the said Krum Mill & Elevator Company claimed that it was entitled to the flour and meal, or the money, until it was paid for. That the Zephyr Mercantile Company had and has its residence in Brown county, Tex., and was engaged in the general merchandise business, buying and selling flour, meal, and other merchandise, at retail, and was so engaged when it procured the flour in question in this suit; and it was understood between the Krum Mill & Elevator Company and the Zephyr Mercantile Company, at the time of the contract between them, and at the time the said mercantile company received said flour, that said flour was to be by said mercantile company daily exposed for sale in said business at re-

tail, and to sell it in the usual course of business, and the said Zephyr Mercantile Company did keep said flour in its stock, and daily exposed and offered it for sale by retail in Zephyr, Brown county, Tex., from the time it received said flour until said R. H. Foster, receiver, took possession thereof. At the time the contract herein referred to was made, the Krum Mill & Elevator Company was doing a general business of selling flour and meal to retail merchants in Texas.

The terms upon which the flour and meal were shipped to the bankrupt are set forth specifically in the letter of the mill company of date October 11, 1911. The bankrupt, by telegram of date October 12th, assented to and accepted these terms. The mill company stipulates that the goods will be shipped only on "consigned terms." Explanation of the phrase "consigned terms," as set forth in its letter, includes some, but not all, of the elements usually found in contracts covering consigned goods for sale by a factor. It will be noted the mill company declares: "We will not pass the possession of the goods to you, nor to any one." The physical possession of the goods was in fact passed to the bankrupt. It may be the writer of the letter intended the bankrupt should hold and exercise possession for the mill company. While proof of possession of chattels is prima facie evidence of title to them, it is not more. The mill company did not stipulate that the title to the flour and meal should be reserved in it. There is, therefore, an absence of express reservation of title in the mill company. Nor does the letter stipulate for the return to the mill company of any unsold portion of this merchandise. So far as I have investigated the authorities, this is a quite universal provision in contracts held to be good as consignment contracts. Sturm v. Boker 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093, and cases there cited; In re Marx Tailoring Co. (D. C.) 28 Am. Bankr. Rep. 147, 196 Fed. 243; In re Galt, 120 Fed. 64, 56 C. C. A. 470.

It is insisted by the mill company that the return of any unsold portion is simply an incident which follows ownership; but in the absence from the contract of any expressed retention of title to goods shipped to another, to be sold in the course of trade, it would be presuming an incident of ownership in the absence of a declaration thereof. The mill company provides for the payment in money for all goods shipped. The time of payment is deferred until the goods are sold; "but we will expect you to pay for same as sold." Again:

"But we will expect you to check up your stock at least every 15 days, and remit for all goods not in your stock."

The mill company stipulates that the bankrupt shall "take out insurance policy covering same in our name, we to pay the cost of such insurance." This is an accustomed provision in consignment contracts; but, as in the matter of the return of any unsold portion, it is a mere incident indicating ownership, which in the absence of a specific declaration of ownership loses much of its significance. An insurance policy was taken on the goods by the bankrupt, but not in the name of the mill company. The memorandum of the mill company, mailed to the bankrupt at the time of the shipment of the goods, would have assisted to make clear and fix the status of the parties as consignor

and consignee respectively of this shipment; but this memorandum seems not to have been assented to by the bankrupt, at least it was not signed by it. It is not for the court to make a contract for the parties; its duty is to interpret the legal significance of what has been done by the parties. Unquestionably the effort on the part of the mill company was to give the shipment of flour and meal the qualities and characteristics of a shipment of goods on consignment; but with the nice distinctions obtaining between a sale of goods and a shipment on consignment, and in the absence from the contract of the essential elements above referred to, I am of opinion it failed to accomplish its purpose, and am therefore constrained to hold that the flour and meal were conditionally sold to bankrupt. In the absence of the filing for record of the contract of conditional sale prior to the institution of bankruptcy proceedings, the trustee of the estate is entitled to the proceeds arising from the sale of the shipment.

The order of the referee will be affirmed.