In re WRIGHT-DANA HARDWARE CO.

Appeal of CANTWELL.

(Circuit Court of Appeals, Second Circuit.   February 17, 1914.)

No. 140.

1. Sales (§ 454*)—Conditional Sale Distinguished from Bailment.
    Claimant from time to time consigned paints to the bankrupt under an agreement that claimant was to pay the freight and keep the goods insured. Both claimant and the bankrupt were entitled to sell from the stock, but the prices at which sales were made were fixed by claimant; the bankrupt accounting to claimant for paints sold by it, less 10 per cent. commission. It was allowed no compensation for paint sold by claimant except 8 per cent., which was intended to compensate for the bankrupt's trouble in packing and shipping the goods; the bankrupt being only responsible to the claimant for payment for paint sold to its

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

customers. *Held*, that the transaction constituted a bailment and not a conditional sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1324, 1325, 1333, 1334; Dec. Dig. § 454.*

What constitutes a contract of conditional sale, see note to Dunlop v. Mercer, 86 C. C. A. 448.]

2. BANKRUPTCY (§ 140*)—OWNERSHIP OF PROPERTY—BAILMENT.

Where paint belonging to claimant was in the hands of a bankrupt under a contract of bailment, title did not pass to the bankrupt's trustee under the rule that he takes only the title which the bankrupt had at the time of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

3. BAILMENT (§ 21*)—POSSESSION OF PROPERTY—RECOVERY BY BAILOR.

Where a creditor of a bailee seizes the bailed property, the bailor may recover possession unless by his acts he has estopped himself from asserting title.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 91–102; Dec. Dig. § 21.*]

4. BANKRUPTCY (§ 143*)—TRUSTEE—TITLE—STATUTES.

Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) § 70, providing that the bankrupt's trustee shall be vested by operation of law with the title of the bankrupt to "property which, prior to the filing of the petition, he could by any means have transferred, or which might have been levied on and sold under judicial process against him," does not include property in the hands of a bankrupt bailee or of an agent who never had title, but who may have had a right to sell the property for the benefit of the bailor or principal.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. § 143.*]

Appeal from the District Court of the United States for the Northern District of New York.

In the matter of bankruptcy proceedings of the Wright-Dana Hardware Company. From a decree (205 Fed. 335) allowing the claim of the Warren Paint Company, John A. Cantwell, as trustee, appeals. Affirmed.

On appeal from a final decree of the United States District Court for the Northern District of New York allowing a claim of the Warren Paint Company at the sum of $3,529.82 against the Wright-Dana Hardware Company, bankrupt.

The Wright-Dana Hardware Company was adjudicated a bankrupt February 5, 1912, on a petition filed by its creditors January 17, 1912. Among the claims filed against the bankrupt's estate was that of the Warren Paint Company in the sum of $3,696.42.

The Wright-Dana Hardware Company had carried on for many years at Utica, N. Y., a general hardware business. The Warren Paint Company, was a corporation incorporated by and under the laws of the state of Ohio. The paint company claimed that it kept a stock of paint with the hardware company; the said paint being consigned to the latter company, which had the right to sell portions of the stock to its own customers as needed, the hardware company receiving a commission on its sales and becoming responsible to the paint company for the payment by the persons to whom the paint was sold. The paint company also had the right to sell from the stock of paint kept in the warehouse of the hardware company. The hardware company was to pay at the end of the year for the goods it had sold during the year.

On February 5, 1912, the day of the adjudication of bankruptcy, a salesman of the Warren Paint Company called at the store of the Wright-Dana Com-

pany and was permitted to take away some of the stock of paint of the value of $1,766.80, which was shipped by him to the Warren Paint Company. This was done with the knowledge and approval of the attorneys for the bankrupt. No question is made but that the Warren Paint Company had full knowledge of the financial condition of the hardware company at that time.

The trustee claims that the return of a portion of the paint on February 5th constituted a preference, and that the claim made against the bankrupt by the Warren Paint Company should have been disallowed unless a sum equal to the value of the paint thus turned back to the company was paid over to him.

Martin & Jones, of Utica, N. Y. (Richard R. Martin, of Utica, N. Y., of counsel), for appellant.

Charles B. Mason, of Utica, N. Y. (James F. Hubbell, of Utica, N. Y., of counsel), for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The question which is involved in this case depends upon whether the paint which the Warren Paint Company shipped to the Wright-Dana Hardware Company became the property of the latter or continued to be the property of the former. If it remained the property of the paint company, as the court below held it did, then that company had a right to the possession of its property and no preference was obtained over other creditors. But, if the title was vested in the hardware company, it is evident that the paint company obtained a preference under the Bankruptcy Act when it was allowed to take into its possession a portion of the stock on the day the hardware company was adjudicated a bankrupt, and that its claim should have been disallowed until its preference was surrendered.

[1] An examination of the record convinces us that the title to the paint which the paint company shipped to the hardware company was not vested in the bankrupt, but remained in the paint company. It appears that, under the agreement between the two companies, the paint company, from time to time consigned a stock of its paints to the hardware company; the former company paying the freight on goods so shipped. The paints, while in the possession of the hardware company, were kept insured by the paint company, down to the time of the bankruptcy. Both the paint company and the hardware company had the right to sell from the stock of paint thus carried, but the price at which sales could be made was fixed by the paint company. If prices rose during the year, the price at which the paint could be sold out of the consigned stock was advanced by the paint company. If prices declined, then the paint company reduced the price at which the hardware company could sell. When the hardware company took inventories of its own assets, it never included the stock of consigned paint. The hardware company at the close of a year (for the arrangement between the companies extended over a series of years) ascertained from the inventory of the year before the amount of paint it then had on hand. To this it would add the amount of paint shipped to it by the paint company during the year. It would then deduct the amount of paint sold during the year out of the stock to its cus-

tomers by the paint company as well as the amount shown to be still on hand by the inventory then taken. The difference disclosed what goods the hardware company had sold during the year, and for these goods the paint company was paid, less the 10 per cent. commission which it was allowed on its sales. For goods sold out of the stock by the paint company, the hardware company never received any compensation except a commission of 8 per cent. which was intended to compensate the hardware company for its trouble in packing the goods and shipping them to the persons who had purchased direct from the paint company. As to the sales made by the hardware company, that company was itself responsible to the paint company for the payment by its own customers. The hardware company never paid for any stock of paint it received but only on sales made out of such stock. On June 26, 1911, the paint company wrote the hardware company:

"We regard all of the shipments that have been made to you and all the goods that you retain as being on consignment."

And there is nothing in the record to show that the hardware company at any time understood the matter in a different manner, but much to show that that company understood it in the same way. The facts as disclosed in the record are consistent only with the theory that the title to the paint consigned to the hardware company was retained by the paint company, and that both companies so understood the matter and at all times acted in conformity to that understanding. The paint consigned from time to time was not sold to the hardware company. Indeed, that company refused to buy and never agreed to pay for any part of it except such as it sold, and there is no evidence to justify the theory of a conditional sale. The transaction was a bailment; the bailee being given the privilege of selling to its own customers any part of the stock of paint intrusted to it. But the fact that the hardware company had this privilege did not convert what otherwise would have been a contract of bailment into a contract of sale except as to such portions of the stock as the company actually sold to its customers. See Walter A. Wood Mowing & Reaping Mach. Co. v. Vanstory, 171 Fed. 375, 96 C. C. A. 331.

The claim of the trustee seems to be that as these goods were in the warehouse of the bankrupt at the time of the bankruptcy, and as the bankrupt had the right to make sales from this stock of merchandise, no provision that the title was to remain in the manufacturer, the Warren Paint Company, could be effectual as against the creditors of the hardware company. That would undoubtedly be true if the transaction had been an absolute or even a conditional sale. In re Howland (D. C.) 109 Fed. 869; In re Garcewich, 115 Fed. 87, 53 C. C. A. 510. But in the case at bar, as we have pointed out, the merchandise was not sold either absolutely or conditionally to the hardware company.

[2] As the transaction was simply a bailment, the title continued in the bailor, and inasmuch as the bailee, the bankrupt, never had the title, it is difficult to see how its trustee could get it. The title which the trustee takes is the title which the bankrupt had. It is true that in some respects a trustee's rights are greater than those of his bank-

rupt. Thus he may set aside fraudulent transfers or liens which the bankrupt himself could not do. But the trustee does not assert any fraud in this case. On the contrary, his counsel admitted in his argument that there had been no fraudulent transfer. There can be no doubt that a trustee in bankruptcy is not entitled to goods in the possession of the bankrupt which have been left simply for repairs, storage, or upon other bailments. Remington on Bankruptcy, vol. 1, § 1887. "The general rule is that the trustee succeeds to the bankrupt's title and stands in his shoes and takes the property, in cases unaffected by any fraud of the bankrupt toward creditors, in the same plight and condition in which the bankrupt held it and subject to all equities and rights imposed upon it in the hands of the bankrupt." Remington on Bankruptcy, vol. 1, § 1144.

[3] It has been held that, where a creditor of a bailee seizes the bailed property, the bailor may recover possession unless the bailor has by his acts estopped himself from asserting his title to the property. Hardy v. Hunt, 11 Cal. 343, 70 Am. Dec. 787; Small v. Hutchins, 19 Me. 255; Bellows v. Denison, 9 N. H. 293; Kings v. Humphreys, 10 Pa. 217; Caldwell v. Cowan, 9 Yerg. (Tenn.) 262; Hart v. Hyde, 5 Vt. 328; 5 Cyc. 208.

[4] It is true that the Bankruptcy Act, § 70, provides that the trustee shall be vested by operation of law with the title of the bankrupt to "property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him." We do not, however, understand that this clause includes, or was intended to include, property in the hands of a bankrupt bailee or of a bankrupt agent who never had the title but who may have had a right to sell the property for the benefit of his bailor or principal. It is impossible to give the act any such construction. The bailor cannot thus be divested of his title.

The decree is affirmed, with costs.